## Case No. 16,095.

### UNITED STATES v. PRUSSING et al.

[2 Biss. 344;[1] 12 Int. Rev. Rec. 34; 2 Chi. Leg. News, 385.]

District Court, N. D. Illinois.  July Term, 1870.

INTERNAL REVENUE—VIOLATION OF LAWS—MANUFACTURE OF VINEGAR.

1. A certain percentage of alcohol being produced in the manufacture of vinegar, such manufacture is within the prohibition of the 4th section of the act of July 20, 1868 [15 Stat. 126].

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

2. Any mash, wort or wash from which alcohol might be separated by distillation is "fit for distillation," even though such distillation might not be profitable, and the alcohol is never released from its impure state, but kept down by a sour ferment.

3. The intent of the act is to require all the alcohol used in any of the manufactures of the country to be so separated that the tax can be assessed and collected thereon.

4. Congress has the power to compel all parties using alcohol to use tax-paid spirit, instead of generating it within the mass where it is to be subsequently used.

This was in indictment against the defendants, Prussing and Hitz, for having made and fermented on premises other than a distillery duly authorized by law, to-wit: in the vinegar factory of said Prussing, a molasses wash, fit for distillation and the production of spirits. By agreement of the parties the case was submitted to the court for trial without a jury.

J. O. Glover, U. S. Dist. Atty.

I. N. Arnold and Leonard Swett, for defendant.

BLODGETT, District Judge. Although in this case there is some conflict of testimony, mainly as to the ferment used in making the wort, or wash, described in the indictment, yet, in the view I take of the case, I propose to dispose of it upon the facts developed by the defendant's testimony, which are substantially these: The defendant, C. G. E. Prussing, is a vinegar manufacturer in this city, and has been so engaged for many years past. Prior to the passage of the revenue law of July 20, 1868, and after the passage of the act of congress levying excise duties upon distilled spirits, he manufactured vinegar by distilling a grain mash, such as is used by distillers for the production of spirits, but instead of using a distiller's worm by which the vapor is condensed into spirits, the vapor was conducted directly into a tub of prepared water, where it was condensed until the requisite amount of alcoholic infusion was obtained, when the wash thus prepared was passed through the generators and converted into vinegar. At the time the act of July 20, 1868, was under consideration in congress, and about the time it took effect, he, Prussing, was in Europe, and on receiving from the defendant Hitz, who was his general superintendent in the business here, a copy of the proposed law, he wrote to Hitz that the distillation must cease as soon as the law went into effect, and that from that time forward he must manufacture vinegar by fermenting a molasses wash made in the proportion of one barrel of molasses to twenty barrels of water. Hitz, on receiving this instruction, consulted with Dr. Mahla, a leading chemist of this city, who, after some examination of the law, suggested the propriety of using vinegar or sour beer as a ferment in the wash, instead of using yeast, and in accordance with this suggestion the manufacture has since been carried on by making a wash in the proportion mentioned, and producing a fermentation by the addition of the necessary quantity of sour beer, that is,

about one-third of a barrel of sour beer to a twenty-barrel tub of molasses and water.

The question to be considered and determined in this case is, whether the making of such a wort or wash is a violation of the 4th section of the act of congress above referred to. The portion of said act bearing upon this question is as follows: "Distilled spirits, spirits, alcohol and alcoholic spirit, within the true intent and meaning of this act, is that substance known as ethyl alcohol, hydrated oxyde of ethyl, or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses or sugar, including all dilutions and mixtures of this substance, and a tax shall attach to this substance as soon as it is in existence as such, whether it be subsequently separated as pure or impure spirit, or be immediately, or at any subsequent time, transferred into any other substance either in the process of original production or by any subsequent process; and no mash, wort or wash fit for distillation or the production of spirits or alcohol shall be made or fermented in any building or any premises other than a distillery duly authorized according to law, and no mash, wort or wash so made and fermented shall be sold or removed from any distillery before being distilled; and no person other than an authorized distiller shall by distillation, or by any other process, separate the alcoholic spirits from any fermented mash, wort or wash; and no person shall use spirits, or alcohol, or any vapor of alcoholic spirits in manufacturing vinegar or any other article or in any process of manufacture whatever, unless the spirits or alcohol so used shall have been produced in an authorized distillery, and the tax thereon paid. Any person who shall violate any of the provisions of this section shall be fined for every offense not less than $500, nor more than $5,000, and imprisoned for not less than six months, nor more than two years; provided that nothing in this section shall be construed to apply to fermented liquors." 15 Stat. 125.

On the trial, the evidence of the three leading chemists of this city, namely, Drs. Mahla, Blaney and Mariner, was taken, all of whom concurred in testifying that the fermentation of any saccharine substance generated alcohol, and that acetic acid, or vinegar, could only be produced from such substances by first converting the saccharine matter into alcohol, and that the wash in question would contain about 4½ or 5 per cent. in volume of alcohol; that on being thus produced by fermentation, the alcohol existed as such in the wash, and that the process of distillation was only a mechanical method of separating the spirits from the other substances contained in the wash, the alcohol being the product of the vinous fermentation; that the use of a sour ferment, like sour beer or vinegar, caused the alcohol thus evolved to change more rapidly into acetic acid than yeast, and Dr. Mahla testified that the only object of using the sour ferment was to make a wash which would sour or acidify so rapidly as that it would be practically unfit for distillation and

the production of alcoholic spirits; that is to say it could not be profitably distilled. The vinous fermentation by which alcohol is produced is the same whether generated by yeast or either of the sour ferments mentioned, the only difference being in the rapidity of acidification after the alcohol is generated. All agree that for the purpose of distillation for the production of spirits for the market this sour ferment essentially injures the wash or wort, although alcohol can be obtained, and was obtained by two of these chemists, on analyses from the wash described in the proportion of about four and one-half and five per cent. in volume to the whole quantity. Yet the quality of the alcohol thus obtained was much deteriorated by the amount of acetic acid which had already formed by the change of a portion of the alcohol to acetic acid and all concurred in the statement that the acidification or acetic decay, as some of them termed it, took place much more rapidly by the use of the sour ferment than by the use of yeast, but that before the acetic acid could be produced the saccharine matter must first become alcohol. In other words, it is evident from the proof that the use of the sour ferment does not prevent the production of alcohol, but only causes it to change into acetic acid more rapidly after it is produced. The same quantity of alcohol is evolved by one ferment as the other.

The question then turns upon the meaning of the words "fit for distillation," as used in the law above quoted. Certainly, according to the evidence, the wort or wash thus made, contains alcohol, which might be separated by distillation. Whether it could be profitably separated or not would depend on circumstances, such as the condition of the grain and other markets, the demand for the alcohol or the purpose to which it was to be applied after being produced. The alcohol is generated and brought into existence in the mass of the wort or wash by the process of vinous fermentation. Is the question of its fitness for distillation to be determined by the fact of whether it can be profitably separated from the mass by distillation or not?

The law declares that the tax shall attach to this substance "as soon as it is in existence as such," whether it be subsequently separated "as pure or impure spirit or be immediately or at any subsequent time transferred into any other substance, either in the process of original production or by any subsequent process." It would seem, then, that the purity or impurity of the spirit produced is not the test or criterion by which the fitness of the wash for distillation is to be determined, because the tax attaches to the spirit, whether pure or impure. So, too, the tax attaches to the spirit on its production, although it may be immediately or at any subsequent time transferred or changed into any other substance, either in the process of original production or by any subsequent process. Here the alcohol is generated and brought into existence as such, and by the

peculiar qualities of the ferment used is rapidly, although not instantly or immediately, changed into acetic acid. I conclude, then, that the phrase "fit for distillation" is not synonymous with the phrase "fit for profitable distillation," but that it means capable of distillation and of the production of pure or impure alcoholic spirits.

The real question is, what did congress intend by this specific prohibition of the making of such wort or wash in a place other than a distillery. The obvious intent of the law was to levy a tax for revenue purposes upon all alcohol and alcoholic spirits entering into the composition of any of the known articles of manufacture in the country, and to require that the alcohol thus produced should be produced in authorized distilleries, where it could be measured and gauged, and its manufacture properly supervised by the revenue officers. The evidence shows clearly that alcohol is necessary for the manufacture of vinegar, and though the evidence shows that the defendants do use spirits that have paid the tax in their factory, yet I can see no reason why, if they can make a wash of saccharine material strong enough to produce four per cent. of alcohol, they may not make it strong enough to produce six or even ten per cent., and thus avoid the use of any distilled spirits, and prevent the receipt of any revenue from this source. The manufacture of vinegar by the vaporization of alcohol generated in such wash or mash as has been previously used by Prussing or other manufacturers prior to the passage of the act of July 20, 1868, is prohibited by this act, and the obvious intent of this law was to require all alcohol used in any of the manufactures of the country to be so separated as that a tax could be assessed and collected thereon. For many of the purposes of manufacture where a small proportion of alcohol only is demanded, the requisite amount could undoubtedly be generated by fermentation within the mass where it was to be subsequently made available; and were persons engaged in the manufacture of such articles to be allowed to generate their alcohol by fermentation without carrying the process forward to the separation of the alcohol by distillation, a large amount of the revenue derivable from the tax on alcoholic spirits would be lost to the government. That, at least, seems to have been the view taken by congress, and it is only for the court to inquire what congress meant. It is certainly within the power of congress to prohibit the production of alcohol in any except specified ways, and to throw such checks and guards around the production of this substance as to compel all parties using it to use tax-paid spirits, instead of generating the spirit, as in this case, within the mass where it is to be subsequently used, and there allowing it to remain or be changed as the case may be. The very clause under which this indictment is found sustains the view which I have

taken of the object of the whole section. Why make it a highly penal offence to make any mash, wort, or wash in a place other than a distillery, unless it was intended to prohibit the production of the alcohol which would be generated in such wort, mash, or wash? The making of the wort, mash or wash in such place could produce no injury to any one except by reducing the demand for alcohol to the extent to which it might be thus generated and used.

It is contended on the part of the defense, that the proviso to the section, "provided that nothing in this section shall be construed to apply to fermented liquors," authorized the fermentation of this wash, as shown in the proofs. But to my mind this saving clause of the section is intended to apply only to manufacturers of ale, beer, etc., and to protect them from the penalties of this section.

I therefore conclude after careful study of the law, that it was the intent of congress to prohibit absolutely the fermentation of any compound whereby alcohol should be evolved, unless the same was done in an authorized distillery. Taking this view of the law, I am obliged to find the defendants guilty.

[At the conclusion of this opinion it was intimated by the court and the United States attorney that this was not a case that called for the infliction of the punishments prescribed by law, but that the defendants should have an opportunity to adjust the matter at Washington.] [2]