Calvin D. MITCHELL and Fay Bond Mitchell, Petitioners,

v.

COMMISSIONER OF INTERNAL REV-ENUE, Respondent.

No. 8365.

United States Court of Appeals Fourth Circuit.

Argued Oct. 10, 1961.

Decided March 6, 1962.

Richard E. Thigpen, Charlotte, N. C. (Marcus T. Hickman, Robert L. Hines and Richard E. Thigpen, Jr., Charlotte, N.C., on brief), for petitioners.

Charles B. E. Freeman, Atty., Department of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., John B. Jones, Jr., and Lee A. Jackson, Attys., Dept. of Justice, on brief), for respondent.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and CRAVEN, District Judge.

534

SOBELOFF, Chief Judge.

Capital gains treatment is denied by section 1239 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1239, to profits from the sale of depreciable property when sold by a taxpayer to a corporation of which more than 80% of the value of the stock is held by the taxpayer, his spouse, and his minor children and grandchildren. The question presented here is whether corporate stock, held by a bank in an irrevocable trust for the taxpayer's minor children, is "owned" by these children within the meaning of the statute. The Tax Court, sustaining the Commissioner, held that beneficial ownership comes within the meaning of the statute and that the gain was properly taxed as ordinary income. We disagree.

Southern Appliances, Incorporated, was organized in 1943 for the wholesale distribution of electrical appliances. In 1948, Calvin D. Mitchell, the taxpayer, transferred a number of his shares of the corporation to the Wachovia Bank and Trust Company to hold in three separate, irrevocable trusts for his three minor children. The trustee was to accumulate and reinvest the income until each child reached the age of 21, and then the income and, over a period of time, the entire corpus was to be distributed. The taxpayer did not retain any beneficial or reversionary interest in the income or corpus of the trusts, or any power over their administration.

In August, 1950, the corporation purchased the Ford Building in Charlotte, North Carolina, for $167,500. The property was sold the following month to the taxpayer for the same price. Four years later on August 9, 1954, the taxpayer sold the property back to the corporation for $199,500. The taxpayer's adjusted basis in the property was $153,903.36, and he reported the entire gain of $45,-596.64 as a long-term capital gain.

At the time of the resale of the building to the corporation in 1954, the taxpayer, his wife, and his two younger children, still minors, owned outright 79.54% of the outstanding stock of the corporation. The oldest child, who by then had attained the age of 21, owned outright and was beneficiary under her trust to a total of 8.25% of the stock. The trusts for the two minor children held 12.21% of the stock. Basing his action on section 1239, the Commissioner asserted a deficiency, claiming that $39,-866.64 of the taxpayer's gain, which was allocated to the building, was taxable as ordinary income. This assertion rested on the contention that the stock held in trust for the two minor children was "owned" by the taxpayer's minor children within the meaning of section 1239(a)(2) with the result that the 80% limit was exceeded and the section became applicable. In upholding the Commissioner, the Tax Court relied largely on Treasury Regulation § 1.1239–1 which expressly includes stock beneficially owned within the purview of the section.[1]

Section 1239(a), in pertinent part, provides as follows:

"In the case of a sale or exchange, directly or indirectly, of property described in subsection (b) [property entitled to depreciation deductions as provided in section 167]—

\* \* \* \* \* \*

"(2) between an individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren;

any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231."

1. The Treasury Regulation, in pertinent part, provides that "for the purpose of section 1239, a corporation is controlled when more than 80 percent in value of all outstanding stock of the corporation

is *beneficially* owned by the taxpayer, his spouse, and his minor children and minor grandchildren." (Emphasis supplied.)

To illustrate the operation of this section, suppose the individual taxpayer holds in his trade or business or for the production of income a building with a basis much below the market value of the property. Because the basis is low, the taxpayer may not have any substantial depreciation deductions to set off against his gross income. However, by selling the building to his wholly owned corporation at its market price, higher depreciation deductions will become available. The taxpayer will, of course, have to pay a tax on the difference between the sale price and his basis. However, absent section 1239, this difference is taxed as a long-term capital gain at a maximum rate of 25% if held for more then six months.[2] The corporation, on the other hand, will now possess property with a higher basis which can be depreciated to reduce the corporation's net income, taxable at a maximum of 52%. Because the corporation is owned wholly by the taxpayer, the tax benefit realized by the corporation will redound to him. In the words of the House Report:[3]

> "Thus, in effect, the immediate payment of a capital-gains tax has been substituted for the elimination, over a period of years, of the corporate income taxes on an equivalent amount. The substantial differential between the capital-gains rate and the ordinary rates makes such a substitution highly advantageous when the sale may be carried out without loss of control over the asset because the corporation to which the asset is sold is controlled by the individuals who make the sale."

The tax benefits could be even greater where it is the corporation that sells low basis depreciable property to its individual stockholder. In such a case, provided that the property is held by the individual in his "trade or business" or "for the production of income" so as to qualify for depreciation deductions under section 167, 26 U.S.C.A. § 167, the tax benefits to the individual are enjoyed directly, and not via reduced taxes upon the corporation.

It is in cases of such transfers between corporations and their stockholders that section 1239 has its impact. Where the section is applicable, it operates to deprive the individual taxpayer of this tax advantage by treating as ordinary income the gain to him, or in the reverse situation the gain to the corporation. However, the statute applies only when 80% of the stock in the corporation is "owned" by the taxpayer, his spouse, and his minor children and grandchildren. We turn now to the precise question to be decided, whether stock held by a bank in trust for the taxpayer's minor children can be included as a part of the 80%.

When Congress, drafting other sections of the Internal Revenue Code, meant to include beneficial ownership, it has always used more specific language than we find in section 1239. The closely analogous section 267 of the Internal Revenue Code, 26 U.S.C.A. § 267, is an apt example. Subsection (a) of section 267 prevents a taxpayer from deducting from his gross income a loss arising from the sale of his property to related persons. Subsections (b) and (c) define who are such related persons. Under subsection (b) (2), a loss deduction is not permitted where the sale is between "an individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual." Subsection (c) (1) specifies that "stock owned, directly or indirectly, by or for a * * * trust

---

2. Depreciable property, except that used in a trade or business, is a capital asset as defined in section 1221, 26 U.S.C.A. § 1221, and the proceeds from its sale are given capital gains treatment by section 1222, 26 U.S.C.A. § 1222. Profits from the sale of depreciable property, used in the taxpayer's trade or business and held for six months, are taxed as long-term capital gains under section 1231, 26 U.S.C.A. § 1231.

3. H.R.Rep. No. 586, 82d Cong., 1st Sess. (1951), reprinted in 2 U.S.Code, Cong. & Ad.Law News, pp. 1781, 1807 (1951).

shall be considered as being owned proportionately by or for its * * * beneficiaries," and subsection (c) (2) explicitly declares that "an individual shall be considered as owning the stock owned, directly or indirectly, by or for his family." By this formulation, elaborate when compared to the sparse language of section 1239, loss deductions are not allowed when the taxpayer, together with his family, owns outright or as beneficial owners 50% of the stock of the purchasing corporation.

Similarly, section 707(b) (1), 26 U.S.C.A. § 707(b) (1), disallows a claimed loss deduction arising from the sale of property between a partnership and an individual who owns "directly or indirectly, more than 50 percent of the capital interest, or the profits interest, in such partnership." Subsection (b) (2) of section 707, like section 1239, denies capital gains treatment to the gain realized from the sale of property [4] between a partnership and "a partner owning, directly or indirectly, more than 80 percent of the capital interest, or profits interest, in such partnership." Subsection (b) (3) makes applicable to both of the preceding provisions the attribution-of-ownership rules of section 267(c), which include the provision attributing to the beneficial owners stock held in trust for them.[5]

Thus, as these sections illustrate, the Internal Revenue Code is specific whenever tax consequences depend upon the equitable ownership of stock, as contrasted to its legal ownership. The failure to specify in section 1239 that beneficial ownership is to be included in computing the 80% limit strongly indicates that the beneficial ownership of stock is not to be counted. This conclusion gains impressive support from the history of the legislative development of section 1239.

The bill, as originally passed by the House of Representatives, denied capital gains treatment to proceeds from the sale of depreciable property to a corporation of which 50% of the value of the stock was "owned, directly or indirectly, by or for such individual." [6] It specifically provided that "stock owned, directly or indirectly, by or for a * * * trust, shall be considered as being owned proportionately by or for its * * * beneficiaries." If the taxpayer and his spouse owned 10% of the corporation's stock, the taxpayer was also deemed to own stock held "directly or indirectly, by or for his brothers and sisters (whether by the whole or the half blood), ancestors, and lineal descendants."

The Senate considered the bill as it came from the House too broad in that it would unduly hinder the transfer of depreciable property where there was no tax-avoidance motive, and the section was entirely eliminated.[7] A compromise between the two positions was agreed upon by the Conference Committee, and the present section 1239 was adopted.[8] As compared to the original House measure,

---

4. Section 707(b) (2) applies only to the sale of property which in the hands of the purchaser is not a capital asset as defined by section 1221. This includes depreciable property used in the taxpayer's trade or business, inventory, and accounts receivable. The scope of section 1239 is usually less, being limited to depreciable property. However, if the sale is from the corporation to the individual stockholder, and the property is held by the individual for the production of income, it is depreciable and comes within section 1239, but does not fall within section 707(b) (2) because the property is a capital asset under the section 1221 definition.

5. Other sections of the Internal Revenue Code also specifically include the beneficial ownership of stock within the broad concept of ownership. See sections 318 (a) (2) (B), 421(d) (1) (C) (ii), and 544(a) (1), 26 U.S.C.A. §§ 318(a) (2) (B), 421(d) (1) (C) (ii), 544(a) (1).

6. H.R. 4473, 82d Cong., 1st Sess. § 310 (1951), 2 U.S.Code Cong. & Ad.Law News. pp. 1781, 1909 (1951).

7. S.Rep. No. 781, 82d Cong., 1st Sess. (1951), reprinted in 2 U.S.Code Cong. & Ad.Law News pp. 1969, 2041 (1951).

8. Conference Rep. No. 1213, 82d Cong., 1st Sess. (1951). reprinted in 2 U.S.Code, Cong. & Ad.Law News, pp. 2121, 2135. (1951).

section 1239 raised the 50% ownership limit to 80% and restricted the family concept to spouses and minor children and minor grandchildren. Most important, section 1239 expunged the provision whereby stock held in trust was to be treated as if owned by the trust beneficiaries.

The legislative history also supports our conclusion in yet another way—by the light it sheds upon the rationale which led to the choice of the terms used in the present section 1239. The original House proposal seems to have been designed to cover every situation where, because of the individual's control over the corporation, a sale of depreciable property for the purpose of reducing taxes was a possibility. As drawn, the section would have applied if the seller owned 50% of the value of the stock because generally such ownership is tantamount to control over the corporation. Similarly, stock held by the taxpayer's family was attributed to him on the assumption that cooperation may normally be obtained from close members of one's family. The same notion seems to have been entertained as to stock held in trust, for, as long as the corporation pays a fair price for the property, the trustees, whether individual or corporate, can usually be counted on not to oppose the purchase. Particularly will this be true if the taxpayer has substantial personal or business connections with the trustee.

■ However, the compromise reached by the Conference Committee, following the Senate's rejection of the House proposal, can be viewed only as deliberately restricting the scope of section 1239 to situations in which the taxpayer's control over the corporation was not merely a likelihood, but practically assured. Thus, the stock ownership limit was raised to 80%. Stock held by others

was attributed to the taxpayer only where his control over their stock was thought to be clearly established—these situations being stock owned by his spouse, minor children and minor grandchildren. Significantly, stock held by the taxpayer's adult children was treated, for the purposes of the enactment, to be beyond the taxpayer's power to control. Stock legally held by a trustee can hardly be deemed more subject to the taxpayer's control. To read the word "owned" to include beneficial ownership, as the Government urges us to do, would be to assume that the taxpayer's control over stock held by a trustee was as certain as his control over stock held outright by his spouse or minor descendants and more sure than over stock held by his adult children. In our view, such assumptions cannot be made. An individual's control over a trustee, based only on a spirit of confidence and cooperation, does not fit into the scheme of section 1239. This perhaps explains why the provision concerning beneficial ownership was deleted from the section. At all events, this deletion, as we have seen, was not inadvertent.

■■ We are not unmindful of the contrary administrative interpretation of the word "owned" in section 1239 to which the Treasury Department has adhered since 1952.[9] Consistent, long-standing interpretive rules reflect the judgment of the agency empowered to administer the statute, and afford attorneys and the public a reliable basis for planning. For these reasons, they should not be lightly disturbed. However, as we said in Sims v. United States, 252 F.2d 434, 438 (4th Cir. 1958), aff'd, 359 U.S. 108, 79 S.Ct. 641, 3 L.Ed.2d 667 (1959), "Administrative interpretations are not absolute rules of law which must necessarily be followed in every instance, but

9. The first regulations under section 1239, proposed in 1952, provided that "for the purpose of section 117 (o), a corporation is controlled when more than 80 percent in value of all outstanding stock of the corporation is owned (whether legal ownership or beneficial ownership) by the taxpayer, his spouse, and his minor children and minor grandchildren." Treas. Reg. 111, § 29.117-13 (1953). This language was retained by Treas.Reg. 118, § 39.117(o)-1 (1953). The present regulations, quoted in footnote 1, were adopted in 1957.

are only helpful guides to aid courts in their task of statutory construction." In this case we disagree with the Treasury Regulation because in our opinion it conflicts with the design of the section as revealed by its structure and history. It seeks to extend the coverage of section 1239 into an area beyond that sanctioned by Congress.[10]

 The Government points out that the Treasury Department's interpretation has remained unchanged through two Congressional actions taken with respect to section 1239. In 1954, section 117(o) of the 1939 Code, 26 U.S.C.A. § 117(o), was incorporated into the 1954 Code as section 1239 without any substantial changes,[11] and in 1958, the Technical Amendments Act added subsection (c) to the section to remedy an omission in the 1954 codification to insure that the section would not be given retroactive effect.[12] The Government argues that the Congressional re-enactment and supplementation of section 1239 indicate approval of the Treasury Department's interpretation. Nevertheless, the failure of Congress in such circumstances to change the wording of a statute does not necessarily mean that it has thereby adopted the administrative interpretation.[13] Nothing that has been shown suggests that the Treasury Regulation was ever called to the attention of Congress or any of its committees. Nor do we think that too much weight should ordinarily be placed on speculations as to what Congress thought of a particular administrative regulation in re-enacting and supplementing a statute, absent a showing that the regulation came under consideration. Statutory interpretation should be guided by more reliable indicia.[14] The argument cannot prevail here in the face of the more persuasive considerations pointed out above.

Reversed.

10. Commissioner of Internal Revenue v. Acker, 361 U.S. 87, 92, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959). In United States v. Calamaro, 354 U.S. 351, 359, 77 S.Ct. 1138, 1143, 1 L.Ed.2d 1394 (1957), the Supreme Court said, " * * * we cannot but regard this Treasury Regulation as no more than an attempted addition to the statute of something which is not there. As such the regulation can furnish no sustenance to the statute."

11. See H.R.Rep. No. 1337, 83d Cong., 2d Sess. (1954), reprinted in 3 U.S.Code Cong. & Ad.Law News, pp. 4017, 4428 (1954) ; S.Rep. No. 1622, 83d Cong., 2d Sess. (1954), reprinted in 3 U.S.Code Cong. & Ad.Law News, pp. 4621, 5087 (1954).

12. Technical Amendments Act of 1958, § 56, 72 Stat. 1645, 26 U.S.C.A. § 1239(c) ; see S.Rep. No. 1983, 85th Cong., 2d Sess. (1958), reprinted in 3 U.S.Code Cong. &. Ad.Law News pp. 4791, 4997 (1958).

13. Compare United States v. Calamaro, 354 U.S. 351, 358–359, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957), with Cammarano v. United States, 358 U.S. 498, 510–511, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959).

14. Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 431, 75 S.Ct. 473, 99 L.Ed. 483 (1955); see 1 Davis, Administrative Law § 5.07, at 334–35 (1958).