S. L. ROTHENBERG and Helen Rothen-
berg, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

No. W–2882.

United States District Court
D. Kansas.

Aug. 21, 1964.

Levand & Weil, Wichita, Kan., for
plaintiff.

Newell A. George, U. S. Atty., District
of Kansas, Topeka, Kan., Gene A. Cas-

tleberry and Wm. A. Miner, Tax Dept., U. S. Dept. of Justice, Washington, D. C., for defendant.

WESLEY E. BROWN, District Judge.

This is a civil action brought by plaintiffs, S. L. and Helen Rothenberg, against defendant United States, for the recovery of income taxes in the principal amount of $9,794.06, and assessed interest paid thereon, together with statutory interest on both sums, to be computed at the rate of six per cent (6%) per annum from December 29, 1961, which sums plaintiffs allege were wrongfully assessed for the calendar year 1958. The Court has jurisdiction pursuant to 28 U.S.C.A. § 1346(a) (1) and 28 U.S.C.A. § 1402(a) (1). Trial was had to the Court without jury.

The material facts have been stipulated by the parties and are briefly set out only to clarify our views.

The plaintiffs are husband and wife and filed their joint 1958 federal income tax return on a cash basis. They have two adopted children, Elaine Sue, born December 4, 1946, and Stanley Elliott, born October 31, 1936. Elaine Sue was a minor on January 2, 1958; Stanley Elliott Rothenberg reached the age of 21 subsequent to April 23, 1956 but had been granted the rights of majority prior thereto by a district court of Sedgwick County, Kansas.

On April 23, 1956 Stanley E. Rothenberg as grantor created two trusts, one of which was named the Stanley Trust, and the other named the Susie Trust.

Both trusts were irrevocable, and both named S. Leo Rothenberg, Helen Rothenberg, and Harlan R. Kamen as the first group of trustees. Stanley was the beneficiary of the Stanley Trust, and Susie (Elaine Sue) was the beneficiary of the other. The original corpus of both trusts consisted of certain real and personal property which was previously owned by Stanley, i. e., 83⅓ shares of common stock of Kamen Wiping Materials, Inc., and an undivided ⅓ fee simple interest in the improved realty utilized by the corporation. Prior to the creation of the trusts, the fee title to the real estate and improvements was vested in S. L. Rothenberg, Helen Rothenberg, and Stanley as tenants in common, each owning an undivided ⅓; and the ownership of the issued and outstanding common capital stock of the corporation, was as follows:

| S. L. Rothenberg | 83⅓ shares |
| Helen Rothenberg | 83⅓ shares |
| Stanley Rothenberg | 83⅓ shares |

In January 1958, the Susie Trust and the Stanley Trust joined with the plaintiffs and sold the improved realty to Kamen Wiping Materials, Inc., at its appraised valuation of $55,000.00.

At the time of the sale of the real estate to Kamen Wiping Materials, Inc., the issued and outstanding common capital stock of the corporation consisting of 250 shares of common stock, par value of $100.00 each, was registered on the corporate books as follows:

| Stockholder-Owner | Number of shares | % of outstanding |
|---|---|---|
| S. L. Rothenberg | 83⅓ | 33⅓ |
| Helen Rothenberg | 83⅓ | 33⅓ |
| Stanley Trust | 41⅔ | 16⅔ |
| Susie Trust | 41⅔ | 16⅔ |
| Total | 250 | 100% |

In addition to the stipulated facts the plaintiffs introduced certain testimony to which we have hereinafter referred. This testimony was admitted, but it is not essential for the conclusions which we reach.

Stanley Rothenberg testified that his reasons for establishing the two trusts were that he was about to be drafted at the time and the possibility of injury or death while in the military coupled with his desire to care for his sister led him to create the trusts. S. L. Rothenberg testified that the motivating reason causing the trustees to dispose of the trust interests in the property was that the trustees felt that trust assets should not continue to be comingled with assets of the company. Mr. S. L. Rothenberg did admit that after the sale to the corporation, it depreciated the building on its returns.

At the close of trial, defendant moved to dismiss and plaintiffs moved for directed verdict.

The trial was had on the basis of a Pre-Trial Order which contained a stipulated set of facts. The Pre-Trial Order stated the issue of law before the court as "whether 41⅔rds shares of common capital stock of Kamen Wiping Materials, Inc., held by the Susie Trust under an irrevocable trust agreement for the benefit of the sole beneficiary, Elaine Sue Rothenberg, a minor, was 'owned' by Elaine Sue Rothenberg so as to be attributable to her parents, within the meaning of Section 1239 of the Internal Revenue Code of 1954."

Defendant asserts that beneficial ownership is contemplated by INT.REV.CODE OF 1954, § 1239, arguing that the Commissioner has so interpreted the Code. Treas.Reg. § 1.1239–1 (1957) states:

"For the purpose of Section 1239, a corporation is controlled when more than 80 percent in value of all outstanding stock of the corporation is *beneficially* owned by the taxpayer, his spouse, and his minor children and grandchildren." (Emphasis added)

Under the Regulation, the shares held for the benefit of Elaine Sue Rothenberg, minor, by the Susie Trust would be "owned" by Susie and thus more than 80% of the stock would be attributable to the plaintiff taxpayers. Consequently, the money realized from the 1958 sale to the corporation would necessarily be treated as ordinary income and not long term capital gain. Accordingly, the taxes collected which form the basis for this lawsuit would have been validly collected.

The Fourth Circuit, in Mitchell v. Commissioner, 300 F.2d 533 (4th Cir. 1962), 47 MINN.L.REV. 493 (1963), held however that beneficial ownership of stock is not to be counted under INT.REV. CODE OF 1954, § 1239. In so doing, the court states that the Regulation "conflicts with the design of the section as revealed by its structure and history. It seeks to extend the coverage of section 1239 into an area beyond that sanctioned by Congress". Id. at 538. We concur. We agree with the analysis of legislative history and congressional intent utilized by the court in Mitchell; therefore, that analysis will not be repeated here.

Defendant here argues that the Treas. Reg. should be given additional weight because it had been in effect for over a year when Section 1239 was re-enacted without substantial change by Congress into the INT.REV.CODE OF 1954. Further the section was technically amended in 1958 without any substantive change (See 72 Stat.1645 (1959)). The argument is that the failure of Congress to substantially change the section inferentially shows that the Treas.Reg. is not inconsistent therewith and that Congress adopts the interpretation of the Commissioner. The argument has been criticized on the basis of the weak assumption that Congress was actually aware of the Regulation at the time of re-enactment. See, e. g., 1 DAVIS, ADMINISTRATIVE LAW § 5.07 (1958); Griswold, A Summary of the Regulations Problem, 54 HARV.L.REV. 398 (1941).

Further, the Supreme Court has indicated that the re-enactment rule should not be utilized absent evidence that Congress had actual knowledge of the Regulation at re-enactment time. See United States v. Calamaro, 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed.2d 1394 (1957); cf.

Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955). In Calamaro the Regulation at issue had been in effect for "only three years." 354 U.S. at 359, 77 S.Ct. at 1143, 1 L.Ed.2d at 1400.

The Regulation at bar had been in effect considerably less than three years at the time of re-enactment into the INT. REV.CODE OF 1954. And it is most probable that Congress did not consider such matters at the time of passage of the technical amendments in 1958. The court in Mitchell found no indication that the Treas. Reg. had been called to Congress' attention. The statement made in the case at bar by defendant that Congress was "undoubtedly cognizant" (Brief for Defendant, p. 16) of the Regulation at time of re-enactment is no more persuasive as evidence of knowledge to us than it was to the Mitchell court.

In one respect at least, Mitchell is a fortiori to the instant case. In Mitchell the settlor of the trust involved was the *taxpayer himself*; in the case at bar, the settlor was the *adult child* (by means of prior emancipation) of the taxpayer plaintiffs. Had the settlor here maintained his ownership, his shares of stock would clearly be outside the scope of Section 1239.

Defendant argues alternatively that plaintiff's ownership of stock would be even greater under the "legal ownership" approach to section 1239. This, defendant asserts, results from the fact that plaintiffs are trustees of *both* the Stanley Trust and the Susie Trust and therefore are "legal owners" of two-thirds of the shares held by *both* trusts (there being three trustees of the trusts). The argument is without merit.

■ Defendant recognizes that there are three trustees of the trusts—plaintiffs plus a third person who for the purposes of this suit is a "stranger" to plaintiffs. Defendant concludes that plaintiffs "own" two-thirds of the shares held by the three trustees. But trustees hold as joint tenants, not as tenants in common. See, *e. g.*, 1 BOGERT, TRUSTS §

122 (1951). And this rule is not changed by statutes overruling the common-law presumption of joint tenancy. KAN.G.S. 1949, 58–501 provides that a "grant * * * to * * * trustees, as such, shall create in them a joint tenancy unless the grant * * * expressly declares otherwise." The trust instrument at bar does not expressly declare otherwise.

■■ Nor do individual trustees hold as individuals; they hold as *trustees*. It is a breach of trust for a trustee to take title in his individual name, even though he does not mingle the "property" with property of his own. 2 SCOTT, TRUSTS § 179.3 (2d ed. 1956). Thus the shares of Kamen Wiping Materials, Inc. stock in question are not held by the taxpayer as such—the shares are held by the Susie Trust and the Stanley Trust.

■■ It is the duty of each of the three trustees to participate in the administration of the trust. The fourteenth paragraph of the trust instruments here provides that the powers of the trustees may be exercised by a majority of the trustees. But in handling the stock (trust res) for their own benefit, the majority trustees would be guilty of a breach of trust. And it is improper for one trustee to leave control to the other two. And it is the duty of each to prevent others from committing a breach of trust. See, *e. g.*, 2 SCOTT, TRUSTS §§ 184, 224–224.6 (2d ed. 1956).

■ INT.REV.CODE OF 1954, § 1239 denies capital gains treatment to profits from the sale of depreciable property when sold by a taxpayer to a corporation when more than 80% in value of the outstanding stock of such corporation is "*owned* by such individual, his spouse, and his minor children and minor grandchildren." (Emphasis added). Stock owned by the adult children of a taxpayer is treated as being beyond the control of the taxpayer. The stock in question here was so owned by an *adult* child (Stanley E.) prior to the creation of the two trusts in 1956.

We hold that the stock "owned" by the Stanley and Susie Trusts, *i. e.*, S. L. Rothenberg, Helen Rothenberg and Harlan R. Kamen, *as trustees*, is not "owned" by plaintiffs Helen and S. L. Rothenberg within the meaning of INT. REV.CODE OF 1954, § 1239. Consequently, the ownership of plaintiff taxpayers is below the level proscribed by the Code; and it follows that the tax assessed and collected for 1958 was wrongfully collected.

See also D.C., 224 F.Supp. 951.

Accordingly, defendant's motion to dismiss is denied and plaintiffs' motion for directed verdict is granted. Plaintiffs are entitled to recover income taxes in the principal amount of $9,794.06, and assessed interest paid thereon, together with statutory interest on both sums, to be computed at the rate of 6% per annum from 29 December 1961 wrongfully assessed for the calendar year 1958.

Plaintiffs' counsel will prepare and submit an appropriate order.