**Teddie WOOD, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**No. CA/8534.**

United States District Court
D. South Carolina,
Florence Division.

March 3, 1966.

John D. Whisenhunt, Bridges & Bridges, Florence, S. C., for plaintiff.

Terrell L. Glenn, U. S. Atty., Wistar D. Stuckey, Asst. U. S. Atty., Columbia, S. C., Richard M. Roberts, Acting Asst. Atty. Gen., Myron C. Baum, Walter J. Tribbey, Attys., Dept. of Justice, Washington, D. C., for defendant.

WYCHE, District Judge.

This is an action by the plaintiff for the recovery of One Thousand, Eight Hundred, Sixty-Nine and 47/100 ($1,869.-47) Dollars, paid as distilled spirits taxes plus interest thereon.

The case is now before me upon a motion for summary judgment filed by the plaintiff upon the grounds stated in the motion.

The facts have been stipulated and are substantially as follows: The plaintiff Teddie Wood was arrested by Alcohol and Tobacco Tax agents on June 8, 1963. At the time of his arrest, Teddie Wood had in his possession 900 gallons of mash which, though not distilled, was fit for distillation. The 900 gallons of mash contained 164.7 proof gallons of alcohol.

Thereafter the plaintiff, Teddie Wood pleaded guilty to the criminal charge of possessing an unregistered distillery. Subsequently, a civil tax assessment was made against him with respect to the 164.7 proof gallons of spirits. The assessment was made under Section 5001 at a rate of $10.50 per gallon and included accrued interest due thereon.

After payment of the tax assessed, plus interest due thereon, the plaintiff filed the required administrative claim for refund. After its rejection, this suit was commenced, and is based upon the grounds raised in the claim.

The plaintiff also makes an alternative contention that the alcoholic content of the mash and the number of gallons of proof spirits was less than that determined by the Commissioner. The stipulation by the plaintiff as to the 164.7 proof gallons of alcohol is made for purposes of this motion only, and if the motion for summary judgment is denied, the case will have to be tried if plaintiff pursues his contentions on that factual issue.

The question for decision is whether alcohol contained in a fermented mixture of mash, wash, or wort is taxable as "distilled spirits" within the meaning of Section 5001 of the Internal Revenue Code of 1954, if it is seized prior to being separated by distillation or any other mechanical process.

To determine the question involved in this motion requires the construction of the following federal statutes:

Internal Revenue Code of 1954, Sec. 5001. (As amended by Sec. 201, Excise Tax Technical Changes Act of 1958, P.L.

85–859, 72 Stat. 1275) IMPOSITION, RATE, AND ATTACHMENT OF TAX. (a) Rate of tax—(1) General.—There is hereby imposed on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of $10.50 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon. * * *

(2) Products containing distilled spirits.—All products of distillation, by whatever name known, which contain distilled spirits, on which the tax imposed by law has not been paid, shall be considered and taxed as distilled spirits.

*    *    *    *    *    *

(b) Time of attachment on distilled spirits.—The tax shall attach to distilled spirits as soon as this substance is in existence as such, whether it be subsequently separated as pure or impure spirits, or be immediately, or at any subsequent time, transferred into any other substance, either in the process of original production or by any subsequent process. (26 U.S.C.A. § 5001)

Internal Revenue Code of 1954, Sec. 5002 (As amended by Sec. 201, Excise Tax Technical Changes Act of 1958). DEFINITIONS (a) Definitions.—When used in this chapter—* * *

(5) Distiller.—The term "distiller" shall include every person—(A) who produces distilled spirits from any source or substance; or (B) who brews or makes mash, wort, or wash, fit for distillation or for the production of distilled spirits (except a person making or using such material in the authorized production of wine or beer, or the production of vinegar by fermentation); or (C) who by any process separates alcoholic spirits from any fermented substance; or (D) who, making or keeping mash, wort, or wash, has also in his possession or use a still.

(6) Distilled spirits.—(A) General Definition.—The terms "distilled spirits", "alcoholic spirits", and "spirits" mean that substance known as ethyl alcohol, ethanol, or spirits of wine, including all dilutions and mixtures thereof, from whatever source or by whatever process produced, and shall include whisky, brandy, rum, gin, and vodka. (26 U.S.C.A. § 5002)

Section 5001(a)(1) of the Internal Revenue Code of 1954, supra, imposes a tax, without regard to the means or legality of production, on all "distilled spirits" produced in the United States. The tax is assessed at a fixed rate against each proof gallon of spirits, or the alcoholic equivalent thereof, produced by any person. Sections 5001(a)(1) and 5002(a) (7) and (8).

Plaintiff's contention is that the tax imposed by Section 5001 is applicable only to alcohol that has been extracted or removed from the mash, or other mixture in which it is contained, by the process of distillation (a process of evaporation), and that his alcohol should escape taxation merely because, by chance, it was seized prior to the time he had separated it from his illicitly-produced mash.

This argument is untenable in light of the wording of the applicable statutes, the decided cases, and the Congress' longstanding tacit approval of the Treasury Department's interpretation of those statutes.

The definition of "distilled spirits" in the statute (26 U.S.C.A. § 5002(a)(6), in part, is: The terms "distilled spirits", "alcoholic spirits", and "spirits" mean *that substance known as ethyl alcohol, ethanol, or spirits of wine,* including all dilutions and mixtures thereof, from whatever source *or by whatever process produced* * * *. (Emphasis added)

26 U.S.C.A. § 5001(b) is closely related to the above definition. It prescribes when the tax attaches to distilled spirits. It provides, "The tax shall attach to distilled spirits *as soon as this substance is in existence* as such, *whether it be subsequently separated* as pure or impure spirits, or be immediately, or at any subsequent time, transferred into any other substance, either in the proc-

ess of original production or by any subsequent process." (Emphasis added)

■■ These statutes, when read together, require the tax to attach to the chemical substance known as "alcohol" at the time such comes into "existence" whether mixed with, or diluted by, any other substance, and regardless of whether the alcohol is subsequently "separated" in pure form or otherwise converted or transformed into any other substance in original production or by any subsequent process. The term "distilled spirits" is used in a generic sense in the statute, and includes within its definition all alcohol produced as a result of fermentation, regardless of whether it is or is not subsequently run through any separation or distillation process. This interpretation of the statute is neither new nor novel. This has consistently been the Treasury Department's position since the enactment of the first major distilled spirits legislation in the late 1860's.

The wording of the present statutes, defining the term "distilled spirits" (Section 5002(a)(6)), and prescribing when the tax attaches (Section 5001(b)), was derived from Section 4 of the Act of July 20, 1868, c. 186, 15 Stat. 126. This subsequently became Section 3248, Revised Statutes. This act historically formed the basis of the present statutes. The wording of Section 4 is substantially the same as the present Sections 5001(b) and 5002(a) (6).

Shortly after its enactment, Section 4 of the Act of 1868 was discussed at length in United States v. Prussing, 2 Biss. 344, 27 Fed.Cas. p. 626, No. 16,095 (N.D.Ill. 1870). There the defendant was charged with the criminal offense of producing mash, wash or wort fit for distillation, basically the same violation now provided for by Section 5601(a)(7). The undisputed evidence was almost identical with the facts here, and showed that (p. 627), * * * the wash in question would contain about 4½ or 5 per cent. in volume of alcohol; that on being thus produced by fermentation, the alcohol existed as such in the wash, and that the process of dis-

tillation was only a *mechanical method of separating the spirits from the other substances contained in the wash, * *.* (Emphasis added)

While the question presented in *Prussing* was whether, because of certain chemicals contained in the wash, it was unfit for distillation, thereby rendering the indictment invalid, the following was noted concerning the alcohol contained in the mixture (p. 627). Certainly, according to the evidence, the wort or wash thus made, contains alcohol, which might be separated by distillation. Whether it could be profitably separated or not would depend on circumstances, such as the condition of the grain and other markets, the demand for the alcohol or the purpose to which it was to be applied after being produced. *The alcohol is generated and brought into existence in the mass of the wort or wash by the process of vinous fermentation: * * **

■■ The law declares that the tax should attach to this substance, "as soon as [it] is in existence as such," *whether it be subsequently separated* "as pure or impure spirits *or* be immediately, or at any subsequent time, transferred into any other substance, either in the process of original production or by any subsequent process." It would seem, then, that the purity or impurity of the spirit produced is not the test or criterion by which the fitness of the wash for distillation is to be determined, because the tax attaches to the spirit, whether pure or impure. So, too, the tax attaches to the spirit on its production, although it may be immediately or any subsequent time transferred or changed into any other substance, either in the process of original production or by any subsequent process. * * * (Emphasis added)

■ Since the first judicial construction of this statute, it has been recognized that the distilled spirits tax is applied against "alcohol" the instant it exists as such, regardless of whether it has in fact been or ever is mechanically distilled. A "distilled spirit", within the meaning of the statute, does not neces-

sarily have to have been subjected to the mechanical process of distillation. The reasoning behind this interpretation of the statute was explained shortly thereafter in another criminal case, United States v. Anthony, 14 Blatchf. 92, 24 Fed. Cas. P. 833, No. 14,460 (Cir.Ct., S.D.N. Y.) (1877), as follows (p. 833, * * * in a strictly chemical sense, the terms "ethyl alcohol" and "spirits of wine" are generic terms, and the term "distilled spirits," as defined by (Rev.St.U.S.) § 3248, when used in that sense, would be generic, *and not necessarily confined to the* product of *distillation*, * * *. (Emphasis added) (Section 3248, Revised Statutes, is the same as Section 4 of the Act of July 20, 1868, and is the predecessor of Sections 5001(b) and 5002(a)(6) of the Internal Revenue Code of 1954).

Similarly, the Court in Jordan v. Roche, 228 U.S. 436, p. 444, 33 S.Ct. 573, p. 575, 57 L.Ed. 908 (1913), in a case involving distinguishable facts, stated that the purpose of the forerunner of the present statute was "to impose a tax upon the compounds of alcohol under the single designation of 'distilled spirits' * * *."

The federal courts have consistently interpreted the term "distilled spirits" in a broad generic sense, and have included within its meaning all alcohol contained in any substance or mixture, mash or otherwise.

The only reported decision in which a taxpayer appears to have raised the precise question here at issue is National Fruit Products Co. v. United States, 59 Ct.Cl. 737 (1924), where the Court applied the distilled spirits tax to the undistilled alcohol contained in fruit mash. The Court's two-sentence memorandum contained no statement of its reasons for upholding the tax assessment against the taxpayer, but the headnote of the case is as follows: Where plaintiff mixes sugar and water and after fermentation adds the mixture to apple juice in order to manufacture cider, he is a distiller within the meaning of section 3242 (Section 5002(a)(5)), Revised Statutes, and the alcohol generated by such fermentation is subject to the tax on alcohol within the intent of section 3248 (Section 5002(a)(6)), Revised Statutes, but he is not subject to the penalties imposed by section 3282 (Section 5601(a)(7)), Revised Statutes, and is entitled to recover the amount of such penalties imposed with interest. (A refund of an amount corresponding to the penalty was conceded by the Government).

▪ In what appears to be the only decision squarely in point, in that the tax itself rather than a criminal prosecution was at issue, the administrative interpretation of the statute was sustained without question. A long-standing judicial, as well as statutory and administrative, interpretation should not be lightly overturned. Mitchell v. C. I. R., 300 F.2d 533, 537 (CA 4, 1962); Travelers Indemnity Co. of Hartford, Conn. v. Wells, 316 F.2d 770, 773 (CA 4, 1963); United States v. Stowe-Woodward, Inc., 306 F.2d 678, 680–681 (CA 1; 1962). Plaintiff's position in this case is analogous to that of the taxpayer in Cammarano v. United States, 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959), where the Court said in rejecting the taxpayer's belated attempt to overturn a long-standing administrative interpretation that was embodied in a Treasury regulation (p. 511, 79 S. Ct. p. 532). Here we have unambiguous regulatory language, adopted by the Commissioner in the early days of federal income tax legislation, in continuous existence since that time, and consistently construed and applied by the courts on many occasions * * *.

This reasoning concerning an interpretation of the revenue laws, there embodied in federal regulations, is applicable to provisions of those laws and the administrative interpretations thereof concerned with the taxing of spirits. This seems particularly so where the interpretation in question is supported by long-standing judicial and administrative interpretations. In light of the fact that the forerunner of the statute in question, and the Government's consistent interpretation thereof dates back almost a full century, it is inconceivable that the legislative bodies of the United States would

not have announced their disapproval of the Executive Department's interpretation of this statute, if it was in any way inconsistent with the true congressional intent. The definition statute in substantially unchanged form has been carried forward from 1868 to the present.

It is, therefore, my opinion that alcohol contained in a fermented mixture of mash, wash, or wort is taxable as "distilled spirits" within the meaning of Section 5001 of the Internal Revenue Code of 1954, if it is seized prior to being separated by distillation or any other mechanical process, and that the motion for summary judgment by the plaintiff should be denied, and

It is so ordered.