**DeWitt BROWN and Othel F. Brown,
Plaintiffs,**

v.

**UNITED STATES of America,
Defendant.**

**No. C-C-72-229.**

United States District Court,
W. D. North Carolina,
Charlotte Division.

March 6, 1974.

---

3. The Court also observes that the Beach case preceded United States v. Chapman, *supra,* by six (6) years.

Joseph W. Grier, Jr., and James Y. Preston, Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N. C., for plaintiffs.

David B. Sentelle, Asst. U. S. Atty., Charlotte, N. C., and Donald B. Craven, Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## JUDGMENT

McMILLAN, District Judge.

Plaintiffs, DeWitt Brown and Othel F. Brown, husband and wife, brought this action against the United States for refund of personal income taxes for 1966 and 1967, which they allege were illegally assessed and collected, and which were paid under protest on July 23, 1971. The suit is correctly lodged under 28 U.S.C. § 1346(a)(1). The amount in suit is $14,232.07 plus interest from July 14, 1971.

From the record, including voluminous stipulations, the facts are found as follows:

## FINDINGS OF FACT

For some years before March 31, 1958, plaintiffs had operated Dixie News Company, an enterprise engaged in wholesale distribution of news material including newspapers, paperback books, magazines, records and tapes.

On March 31, 1958, the enterprise was incorporated; plaintiffs transferred to the corporation the partnership assets, and were issued stock in the corporation.

On March 24, 1967, there were 993.6 shares of stock outstanding, all duly registered on the corporation books, of which each plaintiff owned half, or 496.8 shares. The stock was not being traded, and could only be bought from or through plaintiffs.

The business operating headquarters and warehouse was a tract of land and a building at 2100 Freedom Drive in Charlotte, which plaintiffs had bought in 1957 for $103,500. They had leased this property to the corporation for eight years and had taken depreciation deductions on their personal tax returns from 1957 to 1967.

Timothy Braswell had been an employee of Dixie News Company most of the years since 1946, when he was eighteen years old.

Before March of 1967, plaintiffs made a valid and binding oral agreement to sell one third (in number and value) of the corporate stock to Braswell at a price (adjusted book value) to be established by an agreed formula. As part of the agreement, plaintiffs also contracted to convey to the corporation the Freedom Drive land and building. The price of the stock to Braswell included one third of the value of the land and buildings. No fixed date for completion of the arrangement was set.

Starting as of April 1, 1967, the parties began to give practical effect to the agreement; Braswell was shifted from a straight commission basis to a salary and bonus basis like that of the other officers; at the June 7, 1967 meeting of stockholders and directors he was elected an officer and director, retroactive to April 1, 1967; evaluation of the stock proceeded; and by June 1, 1967, the amount to be paid plaintiffs by Braswell for his third of the stock had been ascertained.

On June 27, 1967, plaintiffs conveyed the Freedom Drive property to the cor-

poration, as they had agreed earlier, and received $105,000 cash, resulting in the gain on which the tax in question was. levied.

Thereafter, on September 29, 1967, the pre-March agreement to transfer one third of the stock to Braswell was finally consummated; one third of the shares were transferred on the books to Braswell on that date; the certificates were issued then or shortly thereafter; and Braswell began immediately to make payments on the purchase price.

## THE LEGAL PROBLEM

Section 1239 of the Internal Revenue Code of 1954, 26 U.S.C. § 1239, provides for taxation, at ordinary income rates, of the gain realized on a transfer of property to a corporation "owned" by the transferor:

"§ 1239. Gain from sale of certain property between spouses or between an individual and a controlled corporation

(a) Treatment of gain as ordinary income.—In the case of a sale or exchange, directly or indirectly, of property described in subsection (b)—

(1) between a husband and wife; or

(2) between an individual and a corporation more than 80 percent in value of the outstanding stock of which is owned by such individual, his spouse, and his minor children and minor grandchildren;

any gain recognized to the transferor from the sale or exchange of such property shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231.

(b) Section applicable only to sales or exchanges of depreciable property. —This section shall apply only in the case of a sale or exchange by a transferor of property which in the hands of the transferee is property of a character which is subject to the allowance for depreciation provided in section 167."

Treasury Regulation § 1.1239–1 treats "owned" as synonymous with "controlled," and attempts to levy tax at ordinary income rates where more than 80% of the transferee corporation, though not "owned" by the transferor, is "*beneficially*" owned by him:

"§ 1.1239–1 Gain from sale or exchange of certain property between spouses or between an individual and a controlled corporation.

Section 1239 provides in general that any gain from the sale or exchange of depreciable property between a husband and wife or between an individual and a controlled corporation shall be treated as ordinary income. Thus, any gain recognized to the transferor from a sale or exchange after May 3, 1951, directly or indirectly, between a husband and wife or between an individual and a controlled corporation, of property which in the hands of the transferee, is property of a character subject to an allowance for depreciation provided in section 167 (including such property on which a deduction for amortization is allowable under section 168 or 169) shall be considered as gain from the sale or exchange of property which is neither a capital asset nor property described in section 1231. *For the purpose of section 1239, a corporation is controlled when more than 80 percent in value of all outstanding stock of the corporation is beneficially owned by the taxpayer, his spouse, and his minor children and minor grandchildren.* For the purpose of this section, the terms "children" and "grandchildren" include legally adopted children and their children. The provisions of section 1239(a)(2) are applicable whether property is transferred from a corporation to a shareholder or from a shareholder to a corporation." (Emphasis added.)

If the Regulation controls, and if the Braswell third of the stock was not "beneficially owned" by plaintiffs on

June 27, 1967, plaintiffs' gain on the sale of the land is taxable at capital gains rates and plaintiffs are entitled to recover; otherwise, the gain is taxable at the higher, ordinary income rates, and plaintiffs lose.

Section 1239 of the Regulations was apparently drafted in an effort to collect more taxes. Several times the Internal Revenue Service has attempted to use it to collect more taxes, and each time has been rebuffed. In Mitchell v. Commissioner of Internal Revenue, 300 F.2d 533 (4th Cir. 1962), the Fourth Circuit Court of Appeals ruled that stock held by a bank in an irrevocable trust for the taxpayer's minor children was not stock "owned" by those children within the meaning of Section 1239 of the Internal Revenue Code, and therefore it could not be combined with other stock owned by the taxpayer, so as to make him the owner of more than 80% of the corporate stock, and thereby deny him the lower or capital gains rate.

In United States v. Rothenberg, 350 F.2d 319 (10th Cir. 1965), the Tenth Circuit Court of Appeals followed the *Mitchell* case and ruled that corporate stock held by a trustee in an irrevocable trust for the taxpayers' minor child was not "owned" by the child within Section 1239 of the Internal Revenue Code, and that the stock could not be added to the two-thirds of the stock which was owned by the taxpayers so as to raise their equity above the 80% barrier and deny them the benefit of capital gains treatment of the gain on the sale of land to the corporation. Again the effort of the Commissioner to collect taxes by use of the regulation was rejected.

In Trotz v. Commissioner of Internal Revenue, 361 F.2d 927 (10th Cir. 1966), the taxpayer and his wife owned 79% of the stock of a corporation and Ben Kelly, Jr., a third party, a vice president, was the record owner of 21% of the stock. Kelly had pledged the stock to the taxpayer and had assigned to taxpayer the right to collect dividends and an option to purchase the stock if Kelly should die or leave the business. The tax court accepted the Commissioner's view that the taxpayer had such control over the stock that it amounted to ownership. The Tenth Circuit, 3–2, rejected the argument and took the view that Section 1239 of the Code used "owned" in its literal meaning; that the writers of the statute knew how to qualify the term and did so qualify it in other parts of the Code, and that legal owership was required to find that stock is "owned" by the taxpayer. (Seth, Circuit Judge, dissented, taking the view that substance, not form, should control, and that the tax court should be upheld and the higher tax rate imposed.)

### CONCLUSIONS OF LAW

Plaintiffs contend (and with some rough equity in their favor) that the shares under contract to Braswell were not "beneficially owned" by them when the land transfer took place; that if the transfer of the stock to Braswell had taken place before instead of after the transfer of the land to the corporation, the capital gain rate would apply in any event; that this was in substance one arrangement, albeit in several steps; and that substance, not form, should control.

My first impression was favorable to plaintiffs. Moreover, there is a smattering of opportunism in the position of the Internal Revenue Service which apparently keeps Regulation 1239–1 on the books to collect taxes where the courts will allow it, but asks this court to treat the Regulation as a nullity because of the *Mitchell* case.

Nevertheless, after further serious consideration, I have come to the conclusion that 26 U.S.C. § 1239 does apply and that the gain should be taxed at ordinary rates. When the land was conveyed to the corporation, plaintiffs owned all the corporate stock. One third of it was subject to a contract to convey to Braswell, but I do not find from this evidence that the stock was yet beneficially owned by him. The transfer date was not fixed; the entitlement

to dividends was not specified; Braswell had no right to exercise voting rights in the stock; and the whole transaction was still in process of development.

■ Moreover, even if Braswell had become beneficial owner of the stock, there appears to be no reasonable way to avoid the force and the persuasive rationale of *Mitchell* and the other cited cases. Regulation § 1.1239–1 is simply not the law of this circuit; and I am persuaded that the Fourth Circuit Court of Appeals would follow the *Mitchell* analysis of that regulation, and that this court should also follow it, even though the result of so doing, this time, is to collect more taxes rather than less.

## JUDGMENT

Plaintiffs' claims for relief are denied and this action is dismissed.